UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
DESMOND A. WALSH,

                Plaintiff,

     -against-                    MEMORANDUM DECISION AND
                                         ORDER
LOUIS DEJOY, Postmaster General, United States
Postal Service,[1]                             14 Civ. 7239 (GBD) (KNF)

                Defendant.
------------------------------------- x
GEORGE B. DANIELS, United States District Judge:

Plaintiff Desmond A. Walsh brought this action against his former employer, the Postmaster General of the United States Postal Service, alleging violations of: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) the Fourteenth Amendment right of equal protection and due process pursuant to 42 U.S.C. § 1983 ("Section 1983"); (3) the Family and Medical Leave Act of 1993 ("FMLA"); (4) the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973; (5) Article 15 of the New York Executive Law; and (6) the New York City Human Rights Law ("NYCHRL"). (Second Amended Compl. ("SAC"), ECF No. 59, ¶¶ 104–147.) Specifically, Plaintiff alleges that Defendant discriminated against him on the basis of his male sex by reassigning him to another postal service duty station and by delaying completion of certain work-place injury related paperwork. He also contends that Defendant retaliated against him in response to his EEOC complaint by ultimately terminating his employment with the United States Postal Service ("USPS"). (*See generally* SAC.) Defendant moved for summary judgment under Federal Rule of Civil Procedure 56(a). (ECF No. 77.)

---

[1] Louis DeJoy, who became the Postmaster General of the United States in June 2020, is automatically substituted for former Postmaster General Megan Brennan as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

Before this Court is Magistrate Judge Kevin Nathaniel Fox's July 28, 2021 Report and Recommendation (the "Report"), recommending that Defendant's motion for summary judgment be granted. (Report, ECF No. 103, at 35.) Magistrate Judge Fox advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 35.) Plaintiff filed timely objections.[2] (Pl.'s Objs. to R. & R. ("Objs."), ECF No. 106.) Defendant filed a response to those objections. (Def.'s Resp. to Pls.'s Objections to R. & R. ("Def.'s Resp."), ECF No. 107).

Having reviewed Magistrate Judge Fox's Report, as well as Plaintiff's objections and Defendant's response, this Court ADOPTS the Report and overrules Plaintiff's objections. Accordingly, Defendant's motion for summary judgment is GRANTED.

## I. RELEVANT FACTUAL BACKGROUND[3]

Plaintiff began working for the USPS in October 1988. (Def.'s Rule 56.1 Stmt., ECF No. 79, ¶ 1.) Starting in July 2011, Plaintiff served as manager of customer service for the Williamsbridge Station. (*Id.* ¶ 2.) Plaintiff's immediate supervisor was the manager of customer service for the Bronx area. (*Id.* ¶ 3.) His supervisor is the only person Plaintiff claims discriminated or retaliated against him. (*Id.* ¶ 4.)

On March 10, 2012, transitional employee letter carrier Elia Martinez was driving a postal van delivering mail in the Bronx when she got into an accident with a private vehicle. (*Id.* ¶ 5.) Martinez was driving the postal van at Plaintiff's direction, even though she was not supposed to

---

[2] Plaintiff did not object to Magistrate Judge Fox's recommendation that his claims under the Americans with Disability Act and Family Medical Leave Act should be dismissed. Consequently, these portions of the Report are entitled only to clear error review. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). Having reviewed these sections of the Report for clear error, and finding none, that portion of the Report is adopted.

[3] The factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

drive postal vehicles, and was specifically designated as a non-driving transitional employee. (*Id.* ¶ 16.)

On March 19, 2012, Plaintiff's supervisor received an email from the manager of delivery and customer service operations informing him that the owner of the private vehicle had made a report to a tort claim coordinator. (*Id.* ¶ 6.) He reported that Plaintiff had attempted to handle repairs to the owner's car himself, and that the owner received a phone call from a woman claiming to be Plaintiff's wife, who said she wanted to buy vehicle parts so their body shop could fix the car. (*Id.* at ¶ 7.) The owner also identified a female employee who had told him that she was responsible for damaging his vehicle and had given him her cell phone number. (*Id.*) Later that day, Plaintiff's supervisor spoke with Plaintiff who stated that he was not aware of an accident, had never spoken to a customer about an accident, and claimed to not be working on the day in question. (*Id.* ¶ 9.) The supervisor also called transitional employee Martinez, who did not admit to causing the accident. (*Id.* ¶ 10.)

The investigation continued and, on March 20, 2020, it was determined that the vehicle owner had also provided the tort claim coordinator with telephone numbers matching Plaintiff's, a post office fax number, a note left on the windshield of his vehicle instructing him to call Plaintiff, a voice recording of the woman who purported to be Plaintiff's wife calling about ordering car parts, and a witness statement. (*Id.* ¶¶ 11, 27.) The supervisor then spoke directly to the owner, who told him that he met Plaintiff on the day of the accident and confirmed the information he had previously provided. (*Id.* ¶ 13.) The supervisor again spoke to Martinez, who told him that Plaintiff had "intimidated" her the previous day when the supervisor called because Plaintiff was standing over her during the call. (*Id.* ¶ 17.) Martinez then showed the supervisor text messages from Plaintiff that stated that the vehicle owner had called and reported the accident, and that Martinez

3

should not have provided the owner with any information. (*Id.* ¶ 18.)

On March 21, 2012, Plaintiff was reassigned to a different duty station. (*Id.* ¶ 19.) The supervisor also reassigned to different stations other management employees who were being investigated with respect to the March 10, 2012 accident, including a female customer service supervisor, and another male employee. (*Id.* ¶ 20.) The female supervisor would later admit that she was at the scene of the accident with Plaintiff and that Plaintiff instructed her not to report the accident. (*Id.* ¶ 29.) Plaintiff's supervisor made these reassignments to minimize taint or confusion while conducting his investigation. (*Id.* ¶ 19.) It is undisputed that Plaintiff's reassignment did not change his salary, title, or other terms and conditions of his employment. (*Id.* ¶ 22.)

On April 11, 2012, the supervisor contacted the USPS Office of the Inspector General and requested an investigation into Plaintiff's actions in connection with the March 10 accident. (*Id.* ¶ 31.) The OIG investigation produced a 33-page report, including interview memoranda and exhibits, on July 20, 2012, which confirmed the information that had been previously reported. (*Id.* ¶¶ 31–36.) Based on his investigation and his review of the OIG Report, Plaintiff's supervisor decided to propose that Plaintiff be terminated. (*Id.* ¶ 37.) The supervisor's declaration makes clear that he decided termination was appropriate, in part, because Plaintiff: (1) engaged in a scheme to cover up the accident, (2) tried to involve those he managed in his scheme, (3) failed to report the March 10 accident, (4) instructed Martinez, who was not authorized to drive, to drive the postal van, (5) should not have attempted to personally resolve the vehicle owner's claims, and (6) lied regarding his involvement. (*Id.* ¶ 38.) Plaintiff's supervisor signed the notice of proposed removal and sent it to Plaintiff's new manager. (*Id.* ¶ 39.)

Ultimately, the postmaster for the Bronx, reviewed the written materials from the

4

investigation into Plaintiff's conduct, including the OIG Report and the information from the investigation and decided that termination was warranted. (*Id.* ¶¶ 40–50.) Plaintiff's manager was not involved in this final determination and the Bronx Postmaster was the sole deciding official. (*Id.* ¶¶ 45, 50.) He issued his decision to terminate Plaintiff on February 6, 2013. (*Id.* ¶ 48.)

## II. LEGAL STANDARD

### A. Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### III.  THE REPORT IS ADOPTED

#### A. Plaintiff Failed to Establish a Prima Facie Case of Discrimination Under Title VII

Plaintiff argues that Defendant discriminated against him on the basis of sex by reassigning him to another postal service duty station. Magistrate Judge Fox concluded that Plaintiff failed to establish a *prima facie* case of discrimination with respect to his Title VII claim. (Report at 23–24.) Specifically, Magistrate Judge Fox found that Plaintiff's reassignment to another duty station did not constitute an adverse employment action. (*Id.* at 24.)

To state a prima facie case of employment discrimination under Title VII, a plaintiff must demonstrate that (1) he was a member of a protected class (e.g., gender or persons who are at least 40 years of age), (2) he was qualified for the position he held, (3) he suffered an adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discriminatory intent. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). For purposes of a discrimination claim, to establish that an employer's conduct constituted an adverse employment action, a plaintiff must show that the conduct resulted in a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted). Common examples of adverse employment actions include "termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment." *Id.* (citation omitted). Indeed, an adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).

Here, it is undisputed that Plaintiff's reassignment to another duty station did not impact

his salary, title, or other terms and conditions of his employment. Plaintiff has not identified any evidence, at any stage of this litigation, demonstrating that his reassignment created any materially adverse change in his employment.[4] Moreover, Plaintiff's objections do not challenge Magistrate Fox's finding that he failed to show he suffered an adverse employment action. Rather than address this finding, or any finding in the Report[5], Plaintiff claims that a material issue of fact exists because in response to a question at his deposition his supervisor stated that he could not "recall what Mr. Walsh did in 2012." (Pl.'s Objs. 1–3.) Plaintiff appears to take this quotation out of context in order to make it appear that the supervisor was testifying that he could not recall any of the events of 2012 with regard to Plaintiff's conduct. (*Id.*) In actuality, he was responding to a question that asked, "When Mr. Walsh had his accident, did he report back to work?" (Def.'s Reply Br., ECF No. 99, at 7.) Plaintiff's objection fails to undermine the voluminous admissible evidence presented by Defendant that supports the supervisor's account of the Plaintiff's conduct. Accordingly, Plaintiff's objection is overruled, and summary judgment is granted on Plaintiff's Title VII discrimination claim.[6]

---

[4] Plaintiff has also failed to show his reassignment occurred under circumstances giving rise to an inference of discrimination based on his sex. Magistrate Judge Fox correctly found that Plaintiff had not demonstrated that Defendant treated him less favorably than similarly situated employees outside of his protected group.

[5] Similarly, Plaintiff does not object to Magistrate Judge Fox's conclusion that he failed to establish a causal connection between a protected activity (the filing of a formal complaint with the EEOC regarding his sex discrimination claim) and his removal. (Report 25–29.) It is undisputed that the Defendant's investigation into Plaintiff's conduct began on March 19, 2012 and that he filed his EEOC complaint three months later on May 19, 2012. (Def.'s Br. 19–21.) Moreover, Plaintiff was not terminated until February 6, 2013, nearly a year after Plaintiff engaged in a protected activity. *See Clark City Sch. Dist. v. Breeden*, 532 U.S. 268, 271–74 (2001) (noting three months as insufficient to support causal connection and finding that where a supervisor began contemplating personnel action prior to protected activity, there was no causal link sufficient to demonstrate retaliatory motive). Thus, summary judgment is granted on Plaintiff's Title VII retaliation claim.

[6] Plaintiff also alleges discrimination under New York State Human Rights Law and New York City Human Rights Law. But Title VII provides the exclusive, preemptive judicial remedy for claims of discrimination in the course of federal employment. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 828–29, 833–34 (1976). Thus, because Plaintiff was a federal employee, his state and city law claims are dismissed because they

7

## B. Plaintiff Failed to Exhaust His Injury Related Discrimination Claims

Unrelated to the March 10 accident and Plaintiff's subsequent conduct, Plaintiff suffered a workplace related injury on March 27, 2012. (Def.'s Rule 56.1 Stmt. ¶ 51.) Plaintiff argued that Defendant discriminated against him by delaying completion of his injury-related paperwork. (Report at 20–21.) Specifically, Plaintiff argues that his supervisor did not act on a June 21, 2012, request to process sick leave and a September 11, 2012, request to process a portion of an accidental injury claim form for submission to his insurance company. (SAC ¶¶ 83, 87.)

Magistrate Judge Fox found that Plaintiff had failed to exhaust all of his claims aside from his Title VII claim related to sex discrimination and retaliation. (*Id.* at 20–22.) Plaintiff's objection to this finding is quite perfunctory and essentially amounts to a request to be excused from having to comply with the exhaustion requirement. (Objs. 3–5.) Plaintiff does not dispute that his initial contact with an EEO counselor did not occur until November 26, 2012—more than 45 days after June 21 and September 11, 2012. Plaintiff provides no plausible explanation for his dilatory conduct. Plaintiff does not provide this Court with sufficient evidence that would support the conclusion that he acted with "reasonable diligence," but encountered "rare," "exceptional," or "extraordinary" circumstances that would entitle him to equitable tolling. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003); *Boos v. Runyon*, 201 F.3d 178, 184–85 (2d Cir. 2000); 29 C.F.R. § 1614.105(a)(2). Accordingly, Magistrate Judge Fox correctly held that Plaintiff failed to administratively exhaust these claims, entitling Defendant to summary judgment. (Report at 22.)

---

are preempted. *See Shaw v. U.S. Postal Serv.*, 2010 WL 3749233, at *12 (S.D.N.Y. Aug. 16, 2010) (dismissing postal employee's discrimination claims under New York State and City Human Rights Laws because Title VII prided the exclusive remedy for federal employment discrimination.)

## C. The Fourteenth Amendment is Applicable to State, not Federal, Action.

Magistrate Judge Fox found the Plaintiff's Fourteenth Amendment claim brought under 42 U.S.C. § 1983 must be dismissed because a plaintiff cannot maintain a § 1983 claim against a *federal* official. (Report at 30.) Magistrate Judge Fox is correct. Plaintiff's §1983 claim does indeed fail because it is a prerequisite for relief under § 1983 that a defendant have acted under the authority of *state* law. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n. 2 (2d Cir. 1991). A § 1983 action cannot be maintained against federal officers. *Id.* Plaintiff objects and asserts that—despite an absence of case law—this Court should interpret Plaintiff's § 1983 claim as a "functional *Bivens* claim."[7] (Pl.'s Objs. at 5.)

Even assuming, *arguendo*, that this Court could consider Plaintiff's claim under *Bivens*, Plaintiff's claim must still be dismissed. Plaintiff cannot bring a constitutional claim against the federal government via the Fourteenth Amendment, because the Fourteenth Amendment applies only to state action and not federal action. U.S. CONST. AMEND. XIV § 1; *see also Russo v. Glasser*, 279 F. Supp. 2d 136, 142 (D. Conn. 2003). Plaintiff does not allege that Defendants acted under anything other than federal law, and accordingly Plaintiff's causes of actions based on the Fourteenth Amendment must be dismissed.[8]

---

[7] In a *Bivens* action, "damages may be obtained for injuries consequent upon a violation of [the Constitution] by federal officials." *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 (1971).

[8] Plaintiff's constitutional claim fails for the independent reason that Plaintiff's alleged injuries are covered through an alternate remedy, namely Title VII, thus "obviating the need to open up Bivens actions to Title VII plaintiffs." *Pratt v. Brennan*, 2020 WL 364195, at *1 (S.D.N.Y. Jan. 22, 2020).

## IV. CONCLUSION

Magistrate Judge Fox's Report is ADOPTED. Defendant's motion for summary judgment, (ECF No. 77), is GRANTED. The Clerk of the Court is directed to close the motion and this case accordingly.

Dated: September 24, 2021
       New York, New York

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge
